```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

JOSE CASTILLO,

    Plaintiff,

v.                          Case No: 2:24-cv-766-JES-KCD

RPST GROUP HOLDINGS, LLC d/b/a ROCKSTAR HARLEY-DAVIDSON,

    Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on plaintiff's Motion for Default Final Judgment (Doc. #10) filed on January 6, 2025. No response has been filed, and the time to respond has expired. The motion includes an Affidavit(Doc. #10-2) requesting a hearing to determine damages. Under the Local Rules, "[a] motion must include — in a single document no longer than twenty-five pages inclusive of all parts — a concise statement of the precise relief requested, a statement of the basis for the request, and a legal memorandum supporting the request." M.D. Fla. 3.01(a). The motion does not include a legal memorandum or an estimate of actual damages.

**I.**

On August 21, 2024, plaintiff filed a Complaint (Doc. #1) against RPST Group Holdings doing business as Rockstar Harley-

Davidson asserting a violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), the Truth in Lending Act (TILA), and Florida's Motor Vehicle Retail Sales Finance Act (FMVRSFA). Service of process was executed on September 6, 2024, by serving an employee of the registered agent authorized to accept service of process.  (Doc. #5.)  After prompting for failure to prosecute, plaintiff filed a motion and a Clerk's Entry of Default (Doc. #11) was issued on October 29, 2024.  Having obtained a default, plaintiff now seeks a default judgment pursuant to Fed. R. Civ. P. 55(b).

When a defendant defaults, he or she "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).  However, the defendant "'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'"  Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005) (quoting Nishimatsu).

"Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. [] When evaluating a motion to dismiss, a court looks to see whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Surtain

v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (internal citations and quotation marks omitted). The sufficiency standard is that "necessary to survive a motion to dismiss for failure to state a claim." Id.

**II.**

Deeming all well-pleaded facts as admitted, plaintiff has established the following: On February 26, 2024, plaintiff went to Rockstar Harley-Davidson with the intent to purchase a Harley-Davidson motorcycle. Upon arrival, he was greeted by a salesperson who insisted that plaintiff needed to fill out a pre-approval credit form before looking for a motorcycle. After completing the credit application, plaintiff did not have enough cash for the down payment and line of credit to make the purchase. The Sales Manager came up with a solution for plaintiff to apply for a "Rewards" account, which was a credit card with a credit line of $20,000, and plaintiff was charged $7,500 for the purchase of the motorcycle.

Despite protests from plaintiff and with aggressive sales tactics by the sales manager, plaintiff was pushed toward a motorcycle outside his price range and minimum payment requirements. Once a motorcycle was chosen, the Sales Manager broke down the monthly payment as $209 a month but the Sales Manager failed to explain that there would be a second monthly

payment through the "Rewards" credit card bringing the total monthly payments to almost $300 a month, an amount outside of plaintiff's budget. Plaintiff continues to make the two payments and plaintiff did not realize the deception until long after the recession period had expired under TILA.

### III.

**A. Deceptive and Unfair Trade Practices Act (FDUTPA)**

To prevail on an FDUTPA claim, a consumer[1] must show "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. [] To satisfy the first element, the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" Carriuolo v. Gen. Motors Co., 823 F.3d 977, 983-84 (11th Cir. 2016) (internal citations omitted). "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.' [] This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'"

---

[1] A consumer includes an individual. Fla. Stat. § 501.203(7).

Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007) (internal citations omitted).

"Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably. That is, 'a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.'" Carriuolo v. Gen. Motors Co., 823 F.3d 977, 983-84 (11th Cir. 2016) (citation omitted).

"Proof of actual damages is necessary to sustain a FDUTPA claim. [] The statute does not allow the recovery of other damages, such as consequential damages." Dorestin v. Hollywood Imports, Inc., 45 So. 3d 819, 824-25 (Fla. 4th DCA 2010) (internal citations omitted). "Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." Rollins, Inc. v. Heller, 454 So. 2d 580, 585 (Fla. 3d DCA 1984) (citation omitted).

Plaintiff alleges that he is a consumer and defendant engaged in misleading conduct by allowing its salespeople to sell multiple forms of financing without making disclosures, including required financial information and the consumer's right to rescind within three business days. As a result, plaintiff suffered unspecified

damages.  (Doc. #1 at ¶¶ 33-35.)  Plaintiff did not attach any sales or credit agreement or describe the current status of the purchased motorcycle, and no actual damages are alleged.  As actual damages is an element of the claim, no claim has been stated.

### B. Truth in Lending Act (TILA)

"Congress designed TILA to promote the informed use and awareness of the cost of credit by consumers. [] The Act ensures a meaningful disclosure of credit terms to enable consumers to compare readily the various credit terms available in the marketplace."  Rodash v. AIB Mortg. Co., 16 F.3d 1142, 1144 (11th Cir. 1994), abrogated by on other grounds Veale v. Citibank, F.S.B., 85 F.3d 577 (11th Cir. 1996) (internal citation omitted). For a "consumer credit transaction other than under an open end credit plan", a creditor must disclose the identity of the creditor and where the credit is secured, the amount financed, the right to obtain a written itemization, the finance charge, the annual percentage rate, and the due dates and period of payments scheduled.  15 U.S.C. § 1638(a).  "As part of TILA, Congress provided the consumer with the right to rescind a credit transaction by notifying the creditor within set time limits of the consumer's intent to rescind."  Rodash, 16 F.3d at 1145.  An individual may recover damages.  15 U.S.C. § 1640(a).  There is

no right to rescission "if the creditor provided the obligor the appropriate form of written notice published and adopted by the Bureau, or a comparable written notice of the rights of the obligor, that was properly completed by the creditor, and otherwise complied with all other requirements of this section regarding notice."  15 U.S.C. § 1635(h).

"Crucial to this case, is when a creditor must make the required disclosures; all required disclosures must be made *before* the transaction is consummated. 12 C.F.R. § 226.17(3)(b) (emphasis added). Consummation occurs at the point when a consumer becomes contractually obligated on a credit transaction. 15 U.S.C. § 226.2(13). Courts must look to state law to determine when a consumer becomes contractually obligated." Hunter v. Bev Smith Ford, LLC, No. 07-80665-CIV, 2008 WL 1925265, at *3 (S.D. Fla. Apr. 29, 2008), aff'd sub nom. Hunter v. Bev Smith, LLC, 353 F. App'x 218 (11th Cir. 2009).

Plaintiff alleges that he is a consumer and defendant is a creditor.  Before consummating the transaction, defendant failed to disclose the annual rate for each loan, that there would be two different monthly payments for one purchase and the break down of the payments, and defendant failed to rescind the sales contract when someone on behalf of plaintiff contacted defendant within 3

days demanding to rescind. (Doc. #1 at ¶¶ 36-39.) No additional facts are stated.

### C. Florida's Motor Vehicle Retail Sales Finance Act (FMVRSFA)

"Florida law provides that a contract which complies with the federal TILA also complies with the Florida MVRSFA, provided the contract also contains a separate written itemization of financing." Chastain v. N.S.S. Acquisition Corp., No. 08-81260-CIV, 2009 WL 1971621, at *5 (S.D. Fla. July 8, 2009), aff'd, 378 F. App'x 983 (11th Cir. 2010). Under the FMVRSFA, a "retail buyer" is a person who buys a "motor vehicle from a seller not principally for the purpose of resale, and who executes a retail installment contract." Fla. Stat. § 520.02(16). The "retail installment contract" is "an agreement, entered into in this state, pursuant to which the title to, or a lien upon the motor vehicle, which is the subject matter of a retail installment transaction, is retained or taken by a seller from a retail buyer as security, in whole or in part, for the buyer's obligation." Fla. Stat. § 520.02(17). "A retail installment contract shall be in writing, shall be signed by both the buyer and the seller, and shall be completed as to all essential provisions prior to the signing of the contract by the buyer." Fla. Stat. § 520.07(1)(a).

"In the case of a willful violation of this part with respect to any retail installment sale, the buyer may recover from the

person committing such violation, or may set off or counterclaim in any action against the buyer by such person, an amount equal to any finance charge and any fees charged to the buyer by reason of delinquency, plus attorney's fees and costs incurred by the buyer to assert rights under this part." Fla. Stat. § 520.12(2).

Plaintiff alleges that he is a retail buyer and entered into a retail installment contract. Plaintiff alleges that defendant failed to include the amount finances through the "Rewards" credit card, failed to include the payment in the payment details, and misrepresented that the amount financed was a down payment. (Doc. #1 at ¶¶ 41-43.) The retail installment contract was not attached or otherwise provided to determine if a separate written itemization of financing was included.

### D. Default Judgment and Liability

The Court finds that plaintiff has failed to establish the statutory requirements for a violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). As to the Truth in Lending Act (TILA) and Florida's Motor Vehicle Retail Sales Finance Act (FMVRSFA), the necessary elements are stated in a perfunctory manner with no contracts attached evidencing the lack of notice and financial terms. The Court finds the facts are insufficient to support a default judgment on the claims under TILA and FMVRSFA.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Motion for Default Final Judgment (Doc. #10) is **DENIED without prejudice**.
2. Plaintiff may file an Amended Complaint within **FOURTEEN (14) DAYS** of this Order and serve defendant pursuant to Fed. R. Civ. P. 4.
3. If no Amended Complaint is filed, the case will be closed without further notice.

**DONE and ORDERED** at Fort Myers, Florida, this ___22nd___ day of January 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record